Myra Lee LARSON, Plaintiff-Appellee,

v.

Owen Harlan LARSON,
Defendant-Appellant.

Civ. No. 9118.

Supreme Court of North Dakota.

Oct. 23, 1975.

Ella Van Berkom, Minot, for defendant and appellant.

Wheeler, Wolf, Wefald & Durick, Bismarck, for plaintiff and appellee; argued by Albert A. Wolf, Bismarck.

PAULSON, Judge.

This is an appeal from the amended judgment of the Burleigh County District Court in a divorce action commenced by Myra Lee Larson, the plaintiff [hereinafter Myra], against Owen Harlan Larson, the defendant [hereinafter Owen]; and from the order of such district court denying Owen's motion to modify that portion of the amended judgment pertaining to the property settlement and support provisions.

The parties in this action were married on August 1, 1959, at Bismarck. Two children were born as the issue of the marriage, namely: Ward Douglas Larson, born November 24, 1961, and Craig Kenneth Larson, born December 26, 1968.

On October 11, 1974, Myra commenced this divorce action against Owen, alleging irreconcilable differences as grounds for the divorce, and seeking custody of the two children, support payments and suit money from Owen, and an equitable division of the parties' property. Owen, in his answer, denied the existence of irreconcilable differences and counterclaimed for a divorce on grounds of extreme cruelty. He also sought custody of the two children and an equitable division of the couple's property.

The district court granted both parties a divorce on grounds of irreconcilable differences and awarded custody of the two children to Myra.

The following property was owned by the couple at the time of the divorce:

| Property | Value | Mortgage |
| --- | --- | --- |
| House (located in Bismarck) | $36,500 | $25,800 |
| Lot on Garrison Reservoir | 1,100 | - - - |
| 1972 Ford LTD automobile | 2,000 | - - - |
| 1971 Ford Ranger pickup with attached camper | 1,800 | - - - |
| Furniture | None assigned (house completely furnished) | |

Owen's net monthly salary, after federal income tax, social security, and miscellaneous deductions is $1,364.21. In addition,

Owen has the obligation to pay a state income tax. Myra receives an income from teaching piano lessons of from $200 to $400 per month, the total amount being in dispute between the parties.

On March 14, 1975, the district court's amended judgment and decree of divorce was entered, in which it was ordered that Owen pay to Myra for child support the sum of $200 per month per child; assume all outstanding debts of the marriage; maintain hospitalization and medical insurance for the children during their minority; maintain an existing trust account of $1,100 for the benefit of the two children; and maintain life insurance protection in the amount of $20,000 for each child, with the minor children named as beneficiaries.

The district court further ordered that the family home remain the home of the children and that Myra be permitted to occupy the home during the children's minority, with the provision that she keep and maintain it in a clean and livable condition. Owen is required to make payments on the home for taxes, insurance, mortgage interest, and mortgage principal. The district court also imposed a restraint on alienation of the home, and further ordered that the equity of the parties be determined after the interests of the minor children shall have been served.

Finally, the district court awarded title to the Garrison Reservoir property and the 1972 Ford LTD automobile to Owen; and awarded title to the 1971 Ford Ranger pickup with camper attachment to Myra.

On April 5, 1975, Owen moved the district court for an order reducing child support payments, requiring sale of the home and division of the proceeds thereof, and liberalizing visitation rights. The basis of Owen's motion seeking a reduction in child support payments and the sale of the home was that he was financially incapable of complying with the court's order.

Payments which Owen is required to make each month by order of the district court are as follows:

| Child support | $400.00 |
|---|---|
| House payment | 270.00 |
| Life insurance (for boys) | 36.58 |
| Boys' life insurance | 12.00 |
| Insurance on house | 12.00 |
| Dr. Worford (on orthodontist's bill, outstanding at time of divorce) | 50.00 |
| Medical insurance | 27.00 |
| **Total** | **$807.58** |

Owen's monthly living expenses, as submitted by him in an affidavit to the district court, are as follows:

| Rent | $200.00 |
|---|---|
| Utilities | 44.83 |
| Newspaper | 2.40 |
| Drycleaning & laundry | 35.00 |
| Clothing | 30.00 |
| Car expense | 50.00 |
| Medical | 10.00 |
| Food | 180.00 |
| Personal supplies & spending | 70.00 |
| Disability insurance | 3.00 |
| Income protection insurance | 12.66 |
| Automobile & personal property insurance | 16.50 |
| **Total** | **$654.39** |

Consequently, Owen contends that his total monthly expenditures exceed his net monthly income by the sum of $97.96, making it financially impossible for him to comply with the district court's order.

Myra's necessary monthly expenses for the support of herself and the children, according to her October 11, 1974, affidavit, are:

| House payment | $270.00 |
|---|---|
| Gas | 65.00 |
| Water | 10.00 |
| Telephone | 15.00 |
| Food | 200.00 |
| Clothing | 15.00 |
| Laundry | 10.00 |
| Transportation | 30.00 |
| Drugs | 5.00 |
| Medical insurance | 50.00 |
| **Total** | **$670.00** |

However, the $270 house payment is made by Owen under the terms of the amended judgment and decree of divorce.

Pursuant to the terms of the trial court's amended judgment, Myra has the following minimum amount available each month:

| Child support | $400.00 |
|---|---|
| Income (from piano lessons) | 200.00 |
| House payment (including insurance) | 282.00 |
| **Total** | **$882.00** |

In addition, Myra may have additional income available, depending on the time of year from her teaching of piano lessons.

Myra, therefore has a net monthly surplus of at least $212.00, while Owens suffers a monthly loss of $97.96.

After a hearing on Owen's motion, the district court on May 7, 1975, ordered a modification in the divorce decree designed to liberalize visitation rights, but the court denied Owen's motion for a reduction in child support payments; and also denied Owen's motion for an order compelling the sale of the home and a division of the proceeds thereof.

In this appeal, Owen's objections focus on two basic issues:

1. Was the granting of a divorce to Myra, and the limiting of testimony concerning grounds for divorce, clearly erroneous?

2. Were the findings as to child support, the maintenance of the home, and the division of property as set forth by the trial court clearly erroneous?

In reviewing the decision of the trial court, Rule 52(a), N.D.R.Civ.P., provides that, in pertinent part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

In *Ferguson v. Ferguson*, 202 N.W.2d 760 (N.D.1972), in paragraph 3 of the Syllabus, this Court held that:

"Findings that a party to a divorce action has committed adultery, that the best interests of the children of the parties to a divorce action would be served by awarding custody of the children to one party as opposed to the other, and that a particular division of property between the parties to a divorce action is equitable, are appropriately dealt with on appeal as findings of fact. Consequently, a review of these findings is limited to a determination of whether or not they are 'clearly erroneous' within the purview of Rule 52(a), N.D.R.Civ.P."

In *In re Estate of Elmer*, 210 N.W.2d 815, 820 (N.D.1973), this Court stated:

"A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). The mere fact that the appellate court might have viewed the facts differently, if we had been the initial trier of the case, does not entitle us to reverse the lower court. *Nee v. Linwood Securities Co.*, 174 F.2d 434 (8th Cir. 1949); Wright & Miller, Federal Rules of Civil Procedure, Sec. 2585, p. 729 et seq."

In the instant case, we cannot say that the trial court's finding of the existence of irreconcilable differences on which Myra was granted a divorce was clearly erroneous.

"Irreconcilable differences", according to § 14–05–09.1, N.D.C.C.:

" . . . are those grounds which are determined by the court to be substantial reasons for not continuing the marriage and which make it appear that the marriage should be dissolved."

After reviewing the entire record, we find ample evidence that there were substantial reasons for dissolving this marriage. Both parties, in their pleadings, sought a divorce. Both testified that the differences which had arisen could not be reconciled. Attempts at reconciliation had been made, but were not successful. We do not feel, however, that any useful purpose would be served by going into details of the testimony of either party. Suffice it to say that the differences between the parties were real; that such differences had existed for a considerable length of time; and that the trial court had ample evidence before it from which it could conclude that substantial reasons had been advanced which made it appear that the marriage should be dissolved.

We believe that the trial court's limitation of testimony was not error in this case in light of the fact that evidence was received with reference to the conduct of Myra prior to the marriage, notwithstanding that it was not received to the degree that Owen sought or at the stage of the trial that Owen sought to have it received.

Owen next contends on this appeal that it is financially impossible for him to abide by the trial court's order for the monthly payment of child support and other monthly expenses for himself and the family.

Our review of the trial court's order in a divorce action for the division of property and for the payment of child support is limited to a determination of whether or not such order is "clearly erroneous". *Grant v. Grant*, 226 N.W.2d 358 (N.D.1975); *Novlesky v. Novlesky*, 206 N.W.2d 865 (N.D. 1973); *Ferguson v. Ferguson, supra.*

In *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966), in paragraph 7 of the Syllabus, this Court held:

"In determining a division of property between the parties in a divorce action, the court, in exercising its sound discretion, will consider the respective ages of the parties; their earning ability; the duration of the marriage; the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time, its value at that time, its income-producing·capacity, if any, and whether accumulated or acquired before or after the marriage; and such other matters as may be material."

However, the Court must also take into account the needs of the divorced father. In *Hoster v. Hoster*, 216 N.W.2d 698 (N.D.1974), this Court, in paragraph 2 of the Syllabus, held:

"In determining the amount a divorced father should pay for support of a minor

child and alimony to a former wife, the court must be mindful not only of the needs of the child and of the former wife, but of the divorced father; and while he should support the child and pay alimony as best he can, he should not be burdened to the extent that all incentive is to be destroyed but some balance must be found between the needs of the child, the former wife, and the father's ability to pay."

In *Hoster*, the support and alimony payments were ordered reduced by this Court because the husband was financially unable to comply with the decree's terms. The reduction in payments was ordered despite the fact that the husband's voluntary purchase of a car and a house trailer was not "the conduct of an ordinarily prudent man". The Court, in *Hoster*, concluded that:

"Rather than impose upon the divorced father an obligation which he cannot perform, the interests of the child involved can best be protected by striking a balance between the needs of that child and the ability of the father to pay." 216 N.W.2d at 702.

In the instant case, we are called upon to balance the interests of the children against the ability of the father to pay. Unlike *Hoster*, however, there is no evidence that Owen's financial inability to comply with the terms of the court's order and also support himself was caused by imprudent or unnecessary expenditures. While it is true that some minor items of the expense affidavit filed by Owen were disputed, there was no significant attack launched by Myra on the overall accuracy of the expenses testified to by Owen.

After carefully considering all of the evidence in the record, we believe that the trial court's refusal to grant Owen some relief from the amended judgment and decree of divorce in this case was clearly erroneous. It is unrealistic to expect Owen to pay out more each month for child support and living expenses than he is earning, especially when Myra has a monthly surplus of at least $212. Such a situation invites both noncompliance with the court's order and protracted litigation.

However, we cannot see how the best interests of the children would be served by the court's ordering a sale of the home and providing for rental payments by Owen for the children's living quarters. In fact, it would probably be beneficial to both Owen and Myra to maintain the current joint tenancy ownership of the home, with Owen paying the monthly expenses as ordered by the trial court. The equity of both parties in the home increases with every payment. In addition, the home's resale value may also increase between now and the time when the youngest child reaches the age of eighteen. We think the present arrangement is not only in the best interests of the children, but will probably also prove beneficial to both parties.

We believe that the interests of the children of the parties, of Myra, and of Owen, can best be served by modifying the divorce decree so that Myra is required to pay one-half of the house payments of $270.00 per month, that is, $135.00 per month.

The amended divorce decree is modified to provide that Myra is required to pay one-half of the house payments of $270.00 per month, that is, $135.00 per month.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.