Rosalie Alvena VanROSENDALE,
Plaintiff and Appellee,

v.

Lauren Charles VanROSENDALE,
Defendant and Appellant.

Civ. No. 10496.

Supreme Court of North Dakota.

Dec. 15, 1983.

Robert W. Harms (argued), of Harms, Leier & Evenson, Williston, for defendant and appellant.

Terry R. Lorenz of McIntee & Whisenand, Williston, for plaintiff and appellee.

GIERKE, Justice.

This is an appeal by the defendant, Lauren VanRosendale [Lauren], from the amended judgment of the District Court of Williams County granting the plaintiff, Rosalie VanRosendale [Rosalie], a divorce from the defendant and making a division of their property. The amended judgment is modified and, as modified, is affirmed.

On the prior appeal of this case, *VanRosendale v. VanRosendale*, 333 N.W.2d 790 (N.D.1983), we affirmed the district court's judgment with respect to the decree of divorce and reversed that portion of the judgment concerning distribution of property because of deficiencies in the trial court's findings of fact. The case was remanded to the district court for findings of fact concerning the net value of the parties' properties and for application of the *Ruff-Fischer* guidelines.

There are three issues on this appeal: (1) Did the trial court abuse its discretion by making findings of fact, conclusions of law, and order for judgment without the benefit of the record; (2) Did the trial court err by failing to equitably distribute the marital property; and (3) Did the trial court err by failing to include in its amended judgment Lauren's costs as awarded by this court in the prior appeal.

Rosalie concedes that the costs taxed by this court in the original appeal were not included in the amended judgment. That amended judgment shall therefore be modified to reflect the costs taxed in favor of Lauren on the prior appeal.

■ As we noted above, on the first appeal of this case we remanded to the district court for findings of fact concerning the net value of the marital estate and for application of the *Ruff-Fischer* guidelines. It is not disputed that the district court, on remand, issued its findings of fact, conclusions of law, and order for judgment before the record was returned to the district court. Lauren contends that this action fails to comply with this court's mandate and that it constitutes a clear abuse of discretion on the part of the district court.

In *Minnkota Power Cooperative, Inc. v. Lake Shure Properties*, 295 N.W.2d 122, 125 (N.D.1980), we stated that:

"When the mandate of the appellate court makes clear the defects which need to be cured by the district court, the district court need do no more than rectify those defects and proceed in a manner consistent with the appellate opinion."

In the instant case the district court complied with our mandate by issuing its findings of fact and by applying to those findings the *Ruff-Fischer* guidelines. The amended judgment is entirely consistent with the tenor of the original judgment. Our mandate did not require the district court to reconsider the conclusions it drew from the record. Under the circumstances, we find no abuse of discretion on the part of the district court.

The central controversy in this appeal, as it was in the original appeal, is the district court's treatment of certain farmland located in Minnesota in the disposition of the marital estate.

On June 12, 1969, Rosalie's parents purchased, by contract for deed, a section of farmland located in Stevens County, Minnesota, for the total sum of $128,000. When

Rosalie's father died in 1974, Rosalie assumed one-half of the unpaid balance on the contract for deed. The land was then partitioned and Rosalie received a full interest in 320 acres of land.

On November 24, 1974, when Rosalie and Lauren were married, the unpaid balance of Rosalie's share of the contract for deed was $50,000. The value of the land had, by this time, appreciated from approximately $200 per acre, when Rosalie's parents purchased it, to approximately $500 per acre.

From 1974 until 1979, all of this land was cash leased to her brother for $9,600 annually; from 1979 through the present time it has been leased for $11,200 annually. Each annual payment was deposited into a joint account of Rosalie's and her mother's in the Chokio State Bank of Chokio, Minnesota. From this account the annual installment payments and taxes were paid as required under the contract for deed. On March 27, 1979, to enable Rosalie to pay off her share of the balance due on the contract for deed, she, Lauren, and Rosalie's adult children signed a note at the Lakeside State Bank, of New Town, North Dakota, for $32,000, with payments to be paid annually from the annual farm rental. This has been done each year and the final payment was to be made on November 3, 1982. All of the installment payments were made as required on the contract for deed and the payments to the Lakeside State Bank and the real estate taxes were paid from the annual rentals except for the total sum of $2,396.15 of additional funds which were required to pay the 1979, 1980, and 1981 taxes. These funds were paid from the parties' joint assets.

In 1979, Rosalie and Lauren, as her spouse, executed a quitclaim deed conveying Rosalie's interest to a strawman. On the following day, the strawman reconveyed the plaintiff's interest in the Minnesota farmland to Rosalie and her children "as joint tenants and not as tenants in common". Gift tax returns indicated that Rosalie retained a one-half interest and the

remaining one-half interest in the Minnesota farmland was conveyed one-tenth to each of her children. The district court adopted as its finding of fact that Rosalie is the owner of an undivided one-half interest in the 320 acres. Although this finding appears to be inconsistent with the language of the deeds, it has not been challenged on appeal and we therefore adopt the findings of the district court in this regard. The district court placed the value of Rosalie's interest at $160,000. This was arrived at by multiplying Rosalie's one-half interest in 320 acres—160 acres—times $1,000, the value per acre of the land at the time of divorce.[1] The total marital estate, including the farmland, was valued at $284,400.93.

In making an equitable distribution of the property of the parties, the trial court ordered that Rosalie receive the Minnesota farmland, the family residence, $10,000 in cash, one of the family vehicles, and assorted household goods and appliances. The net value of Rosalie's distribution was approximately $194,000. Lauren, on the other hand, received as his share of the marital estate, the Skol Bar in Tioga, and the balance of the cash on hand in savings and checking accounts, and the securities in his name, less the $10,000 paid to Rosalie under the distribution plan. Lauren also received the remaining vehicles and assorted other household goods. The net value of his distribution was approximately $90,000.

Lauren argues that the distribution of property was inequitable. Specifically, he contends that the trial court failed to give due consideration to his efforts as the family breadwinner and his assistance in rearing Rosalie's children from a prior marriage. He further contends that the trial court failed to take into account his efforts and contributions toward the preservation of the Minnesota property, and the great source of wealth which that property provides to Rosalie. Lauren does not contend that he should be awarded any portion of the Minnesota property but that he should

---

1. At the time the judgment was entered the Minnesota property was subject to an encumbrance of $7,998.07—for a net value of $152,001.93.

be awarded his share of the equity in the family home and that the $10,000 cash award should be reversed.

▮ In a divorce action the trial court's basis for its determination on matters of child support, alimony, and division of property are treated as findings of fact. *Mattis v. Mattis,* 274 N.W.2d 201 (N.D. 1979); *Haugeberg v. Haugeberg,* 258 N.W.2d 657 (N.D.1977); *Kostelecky v. Kostelecky,* 251 N.W.2d 400 (N.D.1977). Our scope of review on appeal of these findings is limited by Rule 52(a), N.D.R.Civ.P.; *Mattis, supra.* A finding of fact will not be set aside unless clearly erroneous. A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *Kostelecky, supra; In re Estate of Elmer,* 210 N.W.2d 815 (N.D.1973).

▮ Section 14–05–24 of the North Dakota Century Code requires the district court to distribute the parties' real and personal property "as may seem just and proper". Under § 14–05–24 the trial court has jurisdiction to consider both joint and individual property owned by the parties in reaching an equitable division. *Keig v. Keig,* 270 N.W.2d 558 (N.D.1978); *Bellon v. Bellon,* 237 N.W.2d 163 (N.D.1975).

▮ There is, of course, no clear rule for determining what is an equitable division of property. Such a determination lies within the discretion of the trial court. *Haugeberg, supra; Kostelecky, supra; Johnson v. Johnson,* 211 N.W.2d 759 (N.D. 1973). We have, however, stated many times that in determining the division of property under § 14–05–24, N.D.C.C., the trial court may consider the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time, its value at that time, its income-producing capacity, if any, whether accumulated before or after the marriage; and such other matters as may be material. *See, e.g., Haugeberg, supra; Bohnenkamp v. Bohnenkamp,* 253 N.W.2d 439 (N.D. 1977); *Johnson, supra; Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966). Upon remand, the trial court entered the following amended findings of fact in regard to these factors:

## "X [XV]

"As it relates to the various factors utilized in distributing marital property, the court makes the following additional Findings of Fact:

"(A) The ages of the parties are so similar as to not warrant special consideration for either party.

"(B) Due to the education and training of the parties, the Defendant has greater earning capabilities than the Plaintiff.

"(C) Due to the duration of the marriage, the parties are entitled to an equitable distribution of marital property.

"(D) The conduct of the parties during the marriage does not warrant special consideration for either party.

"(E) Due to the financial circumstances of the Plaintiff, and her limited education and skills, together with the necessity of caring for minor children, these circumstances and necessities would require the Plaintiff to retain her interest in the Minnesota farmland and to retain a dwelling house for herself and her children, together with sufficient liquid assets, and her equitable interest in the marital property.

"(F) The property to be distributed to the Defendant has a greater income producing capacity than the Minnesota farmland which is to be distributed to the Plaintiff; however, under the circumstances, it is equitable that the Defendant receive the Skol Bar and the Plaintiff receive her interest in the Minnesota farmland.

"XI [XVI]

"Based on the foregoing findings, the court finds that an equitable property distribution would be as follows:

"(A) To the Plaintiff—due to the fact that the Minnesota property was inherited and brought into the marriage by the Plaintiff, and further that the property neither provided spendable income nor required significant expenditure of joint assets, the Plaintiff should receive the undivided one-half interest in and to the following in Stevens County, Minnesota, to-wit:

"Township 125 North, Range 44 West Sec. 21:    E ½ ..."[2]

■ In reviewing this distribution plan we first note that it has been well established that a property division need not be equal in order to be equitable. *Bender v. Bender,* 276 N.W.2d 695, 697 (N.D.1979). Although at first glance the disparity in value between the property distributed to Rosalie and that distributed to Lauren might appear to be inequitable, we must first look to the factors considered by the trial court before making that determination. It appears from the record that the factor of paramount importance in this property distribution is that Rosalie brought the Minnesota farmland into the marriage. Such a factor is always a valid consideration in arriving at an equitable distribution of marital property. *Fischer, supra.* In the instant case, at the time of the marriage, Rosalie held a contract for deed to 320 acres of property valued at approximately $160,000. There was at that time $50,000 remaining to be paid on the contract. At the time of the divorce, Rosalie had only a one-half interest in the same land. The property, however, had doubled in value during that time, and the contract had been almost entirely paid off. The only real difference, therefore, between Rosalie's financial interest in the Minnesota property at the time of the marriage and her interest at the time of the divorce was

that the $50,000 due under the contract for deed had been paid off. The rental income from the land was used to retire that debt. The trial court found as a fact that the property was "virtually self-sustaining" during the marriage and required the expenditure of no joint income, other than a relatively small expenditure for taxes. The court also found as a fact that any contributions of time, effort, and money by Lauren to the maintenance and supervision of the Minnesota property were not substantial and were "for all intents and purposes, insignificant". Such a finding is supported by evidence in the record and we cannot conclude that the finding is clearly erroneous.

■ Standing alone, however, the fact that Rosalie brought the property into the marriage and that the property was self-sustaining during the marriage does not justify the wide disparity in value between Rosalie's distribution and Lauren's distribution. That is only one factor for the court to consider in determining what is equitable. The court, in making the distribution, also considered Rosalie's limited education and job skills and the limited income-producing capacity of the Minnesota property, as compared to that of the Skol Bar. Viewing the distribution plan as a whole, in light of all of the permissible factors, we cannot say that it is inequitable. It is true that Rosalie receives under this plan a great deal more in terms of net monetary value than does Lauren. Fully 75 percent of that value, however, is directly attributable to property which she brought into the marriage and held as her separate property. The value of the assets jointly acquired and held which she is to receive in the distribution is relatively small.

Nor does this distribution leave Lauren "stripped" in any way. He receives property having a net value in excess of $90,-000. Included in those assets is property which has in the past produced income in

**2.** The Findings of Fact appearing on page 7 of the Amended Findings of Fact were erroneously designated as Findings of Fact X and XI; their correct designations, however, should be Findings of Fact XV and XVI.

excess of $30,000 per year. We also take notice of the fact that the trial court entered no alimony award.

In *Haberstroh v. Haberstroh*, 258 N.W.2d 669, 672 (N.D.1977), we pointed out the circumstances under which a trial court's determination regarding property division would be set aside on appeal:

"The findings of fact upon which the district court's determination of ... property division in a divorce action is based will not be set aside on appeal unless they are clearly erroneous pursuant to Rule 52(a) of the North Dakota Rules of Civil Procedure. The determinations will not be disturbed unless they are induced by an erroneous view of the law. *Rambel v. Rambel*, 248 N.W.2d 856 (N.D. 1977); *Fine v. Fine*, 248 N.W.2d 838 (N.D.1976); *Bellon v. Bellon*, 213 N.W.2d 376 (N.D.1973). A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Kostelecky v. Kostelecky*, 251 N.W.2d 400 (N.D.1977). The mere fact that the appellate court might have viewed the facts differently, if it had been the initial trier of the case, does not entitle it to reverse the lower court. *Larson v. Larson*, 234 N.W.2d 861 (N.D. 1975)."

Lauren has pointed to no erroneous view of the law on the part of the district court and, although we might have viewed the facts differently had we been the trier of fact, we are not left with a firm conviction that a mistake has been made.

Accordingly, for the reasons set forth above, the judgment of the district court will be modified to reflect the costs taxed in favor of Lauren on the previous appeal and, as modified, affirmed.

ERICKSTAD, C.J., and PEDERSON and VANDE WALLE, JJ., concur.

SAND, J., concurs in the result.