Ted J. STECKLER, Plaintiff
and Appellee,

v.

Lydia I. STECKLER, Defendant
and Appellant.

Civ. No. 940014.

Supreme Court of North Dakota.

July 1, 1994.

Wold, Johnson, Feder, Brothers, Beauchene & Schimmelpfennig, Fargo, for plaintiff and appellee; argued by Mark A. Beauchene.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendant and appellant; argued by Pamela J. Hermes. Appearance by Lydia Steckler.

MESCHKE, Justice.

Lydia Steckler appeals from a divorce decree dividing property with Ted Steckler. We affirm.

Ted and Lydia were married in Germany on August 17, 1981. Ted was about 35 years old and Lydia was about 30. By that time Ted had already served almost 17 years in the United States Army. When he retired from the Army in March 1992, the Stecklers moved to Valley City, Ted's hometown. Lydia's mother, Jana Mayer, joined them there when she retired a short time later.

Ted filed for divorce in January 1993. No children were born during the marriage, no spousal support was requested, and the principal question at trial was an equitable distribution of property.

The major assets owned by the Stecklers were their home and Ted's current military pension of $1,963 a month plus a $162 disability payment.[1] The trial court distributed the Steckler's property this way:

| | Lydia | Ted |
|---|---|---|
| Home | 116,000.00 | |
| Pension | | 126,375.04 |
| Vehicles | 8,975.00 | 19,358.00 |
| Household Items | 27,262.00 | 1,000.00 |
| Bank Accounts | 13,593.16 | 3,961.46 |
| Cash Payments | 10,000.00 | (10,000.00) |
| Attorney Fees | 1,000.00 | ( 1,000.00) |
| Mayer Debt | (44,765.00) | |
| | $132,065.61 | $139,694.50 [2] |

The marital estate, including all of Ted's pension, was originally valued at $271,760.11.

Lydia is a German citizen and was uncertain at trial whether she would remain in the United States. This uncertainty led the trial court to choose not to assign her a portion of Ted's future pension benefits. Instead, the court asked for post-trial briefs on the present value of Ted's pension. In response, Lydia's attorney valued the pension at $126,375.04. Shortly after the court used this value in its written opinion, Lydia's attorney learned that the present value of Ted's pension was actually $314,590.72 and moved to amend the findings of fact accordingly and to increase her division. At a hearing on the motion, the trial court accepted the corrected value of the pension but denied the motion because the overall distribution was "fair under the circumstances."

Lydia argues on appeal that the trial court's distribution of property is not equitable. Specifically, she claims that the court erroneously valued the debt to her mother, the monthly cash payments totalling $10,000, and Ted's pension, and thereby made the division of property inequitable without a satisfactory explanation. Ted argues that the distribution is explained and equitable. We agree.

How we review property distributions was recently summarized in *Gaulrapp v. Gaulrapp:*

> In a divorce, the trial court must "make such equitable distribution of the real and personal property of the parties as may seem just and proper...." In making this distribution, "the trial court must consider all relevant factors and guidelines." "A trial court's determinations on matters of property division are treated as findings of

---

1. The present value calculated for Ted's pension did not include this disability portion, as directed by federal law. Originally, 10 U.S.C. § 1408(a)(4) excluded disability pay from the definition of "disposable retired or retainer pay," that federal law allows to be divided as a marital asset. Now, as amended, § 1408(a)(4)(C) only excludes disability payments "using the percentage of the member's disability *on the date when the member was retired.*" (Emphasis added).

Under this new definition, passed in 1986, any future increase in Ted's disability percentage would not affect the amount of "disposable retired pay" because he has already retired.

2. As explained later in this opinion, the actual value of the marital property distributed to Ted was $327,910.18.

fact and will not be set aside on appeal unless they are clearly erroneous under NDRCivP 52(a), or they are induced by an erroneous conception of the law."

510 N.W.2d 620, 621 (N.D.1994) (citations omitted). Under this standard of review, the trial court's valuation and distribution of the Stecklers' property is not clearly erroneous.

## MAYER DEBT

■ Jana Mayer, Lydia's mother, paid $40,000 toward the $105,000 purchase price of the Stecklers' home in 1990. Instead of receiving interest on the debt, Mayer lived with the Stecklers. Ted and Lydia formally assigned Mayer an interest in the home of "the greater of $40,000.00 or 40% of the sale price of the property if the property is sold." In his NDROC 8.3 property listing, Ted valued the home at $116,000 and the Mayer debt at $40,000. Although Lydia valued the home at $120,000, she also listed the Mayer debt at $40,000. As with all the property listed by Ted and Lydia, the court relied on these identical amounts when making its own determination of the debt. Thus, like in *Dick v. Dick,* 414 N.W.2d 288, 291 (N.D.1987), Lydia had a part in this alleged error. She did not dispute the court's valuation of the debt in her post-judgment motion, but now complains on appeal that the actual debt is $46,400, 40% of the value.

Normally, if a post-judgment motion is made, "the party making such a motion is limited on appeal to a review of the grounds presented to the trial court." *Andrews v. O'Hearn,* 387 N.W.2d 716, 728 (N.D.1986). Lydia cannot raise new questions on appeal by hiring a new attorney. Still, even if we consider her arguments, the trial court properly accepted the amount of the debt listed by both Ted and Lydia. Moreover, Mayer was entitled to 40% of the value of the home only if it was sold. The home was distributed to Lydia and not sold. In view of the uncertainty in the future sale price of this rural home, and Mayer's continued residency in it, the trial court committed no clear error in valuing the debt to Mayer at the amount she invested less than three years before trial.

## CASH PAYMENTS

■ "[T]o account for the disparity in division of property," the trial court ordered Ted to pay Lydia $10,000 in 20 monthly installments of $500. Lydia argues that the trial court erred by failing either to discount these payments to present value or to award interest on the deferred payments. This argument was also not raised in Lydia's post-judgment motion. We agree that a court should ordinarily expressly discount periodic payments without interest to present value, but the error is minor in this case.

■ Periodic cash payments must be awarded with interest or discounted to present value if intended as a distribution of property. *Sateren v. Sateren,* 488 N.W.2d 631, 633 (N.D.1992). Otherwise, "the [trial] court is relying upon an artificial value when it distributes the property" and "a reviewing court cannot determine whether the resulting property distribution is equitable." *Id.* An erroneous valuation of an asset does not justify reversal if it is "relatively insignificant." *Halvorson v. Halvorson,* 482 N.W.2d 869, 872 (N.D.1992) (few thousand dollar error in marital estate of over $600,000); *Dick,* 414 N.W.2d at 291 (same); *compare Sateren,* 488 N.W.2d at 633 (requiring reconsideration of $4,500 error in marital estate of $55,000). Here, Lydia will receive a few hundred dollars less than intended by the trial court because of the mistake. As in *Halvorson* and *Dick,* this small error compared to the overall value distributed to her does not justify reversal.

## PENSION DISTRIBUTION

■ The difficult question on appeal is the distribution of Ted's military pension. In making an equitable division of property, the trial court must first determine the value of all the parties' property, including assets brought into the marriage. *Gaulrapp,* 510 N.W.2d at 621; *Anderson v. Anderson,* 390 N.W.2d 554, 555 (N.D.1986) (property inherited before marriage). Only after all marital property is included can a court consider the *Ruff–Fischer* factors and divide the parties' assets equitably. *Gaulrapp,* 510 N.W.2d at 621–22. The premarital origin of certain assets is one factor a court can consider, and a

division need not be equal to be equitable. *Id.* Still, a substantial disparity should be explained. *Id.*

A military pension is a marital asset for equitable distribution, subject to some federal limitations. 10 U.S.C.A. § 1408 (West Supp.1994). *Bullock v. Bullock,* 354 N.W.2d 904, 910 (N.D.1984). As with all marital assets, a trial court can properly consider the portions of a pension earned before, during, and after the marriage. Under the formula first used in *Bullock,* "the number of years of the marriage during which the pension was earned is divided by the number of total years in earning the pension." *Anderson v. Anderson,* 504 N.W.2d 569, 571 n. 2 (N.D. 1993). This formula "determines the actual proportion" of the pension "derived as a result of the marriage." *Bullock,* 354 N.W.2d at 910. The trial court applied this formula at the post-trial hearing and properly found that 39% of Ted's pension was earned during the marriage (10.625 years of active service during marriage/27.5 years of active service).

"Division of retirement benefits at the time of divorce is preferred where there are sufficient assets available at the time of divorce to divide the present value of the retirement benefits without causing an undue hardship to either spouse and where testimony on valuation is not speculative." *Zander v. Zander,* 470 N.W.2d 603, 606 (N.D.1991). The trial court in *Bullock* applied the formula only to divide future monthly payments because it could not determine the present value of an unvested pension. 354 N.W.2d at 908. Here, Ted has already retired and the present value of his pension was easily computed based on monthly payments and life expectancy. The court found that the erroneous valuation of Ted's pension in its original decision ($126,375.04) was slightly higher than the present value of the portion earned during the marriage under *Bullock* (39% × $314,590.72 = $122,690.38). Therefore, the court decided an amended judgment was unnecessary and denied the motion.

The effect of the court's decision was to "set aside to Ted essentially the entire portion of the pension accumulated prior to the marriage," as Lydia observes, and to divide

the rest of the property roughly equally. That coincides with the focus of the *Bullock* formula itself, which is to value the extramarital portion of a pension so it can be "set aside ... where fairly possible." *Gaulrapp,* 510 N.W.2d at 621 (quotations omitted). As long as the overall division of property is equitable, a court can properly award a spouse those marital assets that the spouse brought into the marriage.

We have previously approved unequal distributions where premarital or gifted property is awarded to the recipient spouse in a substantial marital estate. In *Dick,* the parties were married for 17 years and had no children. 414 N.W.2d at 292. The net marital estate was valued at roughly $325,000, of which one spouse received a "credit" of $153,000 for property brought into the marriage and the remaining $170,000 was divided equally. *Id.* In *VanRosendale v. VanRosendale,* the parties were married for eight years and also had no children. 342 N.W.2d 209, 211 (N.D.1983). One spouse received $194,000 of a $284,000 marital estate because she had inherited $160,000 before or during the marriage. *Id.* Compare our decision in *Anderson,* 390 N.W.2d at 554, requiring division of gifted property where a marriage of 17 years ended with three children and a net marital estate of only $106,000, including $70,000 in gifted property.

In this case, the Stecklers had a net marital estate of $459,000, with Ted awarded $188,000 in pension benefits earned before marriage and with the remaining $271,000 divided nearly equally. The fact that Ted brought significant property into the marriage is not enough by itself to justify the wide disparity in the court's distribution. *VanRosendale v. VanRosendale,* 342 N.W.2d at 213. However, this is not a case where a spouse brought gifted or inherited property into a marriage at the beginning of their adult life. The premarital property in this case is the product of Ted's lengthy military career before his marriage at age 35. Considering the 11 years of marriage, the preceding 17 years Ted served in the Army

before marrying Lydia, and the risks Ted assumed by receiving all future pension benefits and little tangible property,[3] we are not left with a firm conviction that the distribution is inequitable.

 Lydia argues that the trial court's distribution must be erroneous when the marital estate was originally undervalued by $188,000. This argument overlooks the second oversight in the court's original decision. The trial court admitted at the post-trial hearing that it "didn't take into consideration ... things that [Ted] accumulated prior to his marriage," as the *Bullock* formula does. The trial court observed that this oversight offsets the erroneous valuation of Ted's pension. We agree.

Lydia also argues that she received less property than finally intended by the trial court. Based on several remarks by the court about a "credit," she claims the court did not intend to set aside the entire premarital portion of Ted's pension, but incorrectly believed that its final valuation of the distributed estate included more of the pension than computed under the *Bullock* formula. It is true that a small amount ($4,000) of Ted's pension was included in the equally divided portion of the estate although earned before the marriage. An unintended distribution based on erroneous valuations can be clearly erroneous. *See Kitzmann v. Kitzmann*, 459 N.W.2d 789, 794 (N.D.1990). We are uncertain what "credit" the court referred to when thinking out loud at the hearing, but it is clear from the record at the hearing that the court then reasonably understood the application of the *Bullock* formula and realized the values distributed to each spouse. Therefore, we are not firmly convinced the trial court distributed a smaller share of the marital estate to Lydia than it intended.

## ATTORNEY FEES

 Lydia requests attorney fees for this appeal under NDCC 14–05–23. We have concurrent authority with the trial court to award fees on appeal and "consider the property owned by each party as a result of the property division, the relative income, whether the property is liquid or of fixed assets, and whether or not the actions of the parties unreasonably increased the time spent on the case." *Hedin v. Hedin*, 370 N.W.2d 544, 548 (N.D.1985). Other than monthly property-distribution installments of $500 for 20 months, Lydia has a limited income and receives no spousal support. In addition to a military stipend while attending school, Ted receives monthly pension benefits and has an arrangement for employment after college. However, Ted's larger pension income is offset by the small amount of other assets he received under the judgment and the time he spent responding to issues that Lydia should have raised in her post-trial motion. Lydia also received nearly $10,000 more than Ted in bank accounts. Therefore, we conclude that each party should pay their own attorney fees.

As Ted notes on appeal, "perhaps the trial court should have requested and made additional formal findings subsequent to the hearing ... on [Lydia]'s Motion to Amend."[4] However, the court adopted the correct value of Ted's pension and its unequal property distribution is sufficiently explained in the record. Ted earned well over half of his pension before marrying Lydia, the source of the pension is a proper consideration, and we are not firmly convinced that the total distribution is inequitable.

We affirm.

---

3. The trial court explained the risks:
 [Y]ou are not subjecting the other spouse to the longevity of the person who is getting the pension.... [I]f he dies tomorrow what is for his estate? Zero.... It is not like a true annuity where the annuity has some value if you die tomorrow.

4. For example, the absence of amended findings might suggest that the court improperly excluded the premarital portion of Ted's pension from the value of the net marital estate. *See Gaulrapp*, 510 N.W.2d at 622 (cannot exclude marital assets as separate property). However, we can reasonably infer from the trial court's statements at the hearing, although not formally expressed in amended findings, that it only weighed the premarital origin of the pension "with the other [*Ruff–Fischer*] factors."

VANDE WALLE, C.J., and NEUMANN and SANDSTROM, JJ., and BERT L. WILSON, Surrogate Judge, concur.

BERT L. WILSON, Surrogate Judge, sitting in place of LEVINE, J., disqualified.