Carol **MUEHLER**, Plaintiff and Appellant,

v.

Wayne **MUEHLER**, Defendant and Appellee.

**Civ. No. 10318.**

Supreme Court of North Dakota.

April 14, 1983.

On 5 February 1981 Wayne and Carol were granted a decree of divorce which provided, in pertinent part, that Wayne pay Carol the sum of $150.00 per month from 1 April 1981 to 1 April 1986 for spousal support and $125.00 per month for child support for each of three children until each child completed high school. The amended judgment, entered on 28 September 1982, reduced the amount of spousal support to $75.00 per month and period of payment to 1 April 1983. The basis of the lower court's decision to reduce spousal support was a change in circumstances due to the employment and increased income of Carol and because Wayne's income remained approximately the same. An amended judgment reducing the amount and period of payment of spousal support payable by Wayne was entered, and Carol appealed.

Carol asserted that the lower court erred in determining there was a change in circumstances which would justify a reduction in the amount and period of spousal support.

This Court has often held that a material change in circumstances of the parties must be shown by the moving party before a modification of a divorce decree is proper. *Eberhart v. Eberhart*, 301 N.W.2d 137 (N.D.1981) [modification of spousal support]; *Corbin v. Corbin*, 288 N.W.2d 61 (N.D.1980) [modification of child support]; *Bingert v. Bingert*, 247 N.W.2d 464 (N.D. 1976) [modification of spousal support]. A fact finding process implementing Rule 52(a), North Dakota Rules of Civil Procedure, is necessary before it can be determined that a material change in circumstances has occurred. *Becker v. Becker*, 262 N.W.2d 478 (N.D.1978).

In *Bingert v. Bingert*, 247 N.W.2d at 467, we said:

"We believe that a 'change in circumstances,' in the context of consideration of a motion to reduce alimony, means a change which affects the financial abilities or needs of one party or the other, and not a change which indicates an increase or decrease in the rectitude of the

Pearce, Anderson & Durick, Bismarck, for plaintiff and appellant; argued by Patrick W. Durick, Bismarck.

Baer & Asbridge, Bismarck, for defendant and appellee; argued by Richard B. Baer, Bismarck.

SAND, Justice.

Carol Muehler appealed from an amended judgment reducing the amount and period of payment of spousal support Wayne Muehler was required to pay her.

conduct of one party or the other or a change which might have affected the grounds for divorce if it had occurred prior to the decree."

■ A determination that a change in circumstances has occurred is not an end in itself but triggers the further inquiry to determine what brought about the change. The type of change will govern the further inquiry. If it involves spousal or child support, or both, the basic inquiry is: Has a substantial change in the financial ability of the payer occurred? If yes, what was or is the underlying cause? Was it self-induced or is it the result of economic conditions, or has the payer become physically or mentally disabled, or did the payer incur new or additional financial obligations and, if so, were they voluntarily assumed or were they imposed by other factors?

If the change relates to or involves the person receiving spousal or child support, then further inquiry is necessary to determine what brought about the change. Did the earnings of the payee-spouse increase and, if so, what brought about the increase? Was it the result of extra work, such as a double shift or extra hours? If yes, then further inquiry is necessary to determine if the extra work was voluntarily undertaken to provide luxuries or to provide the necessities of life to avoid seeking public or governmental assistance? If it was the latter, then it is necessary to determine what brought about the situation. Was it the result of not receiving the payments from the payer-spouse, or were the payments inadequate because of a change in economic conditions?

■ Within these concepts, consideration must be given to whether or not the change in circumstances was contemplated at the time of the original divorce decree or previous modifications. The legal concept of "change in circumstances," as used in divorce matters, is closely tied to equity and contemplates the application of equitable principles.

The foregoing are only examples of the additional questions that need to be answered if it is determined that a change in circumstances occurred. The nature of the change will dictate the further specific inquiries that must be made.

■ Generally, a self-induced change in circumstances does not constitute valid grounds for a modification. Volume 27A C.J.S., *Divorce*, § 239 (1959) at page 1133, states:

"Generally, the decree will not be modified because of a change of circumstances which was brought about by the act of the person seeking modification...."

The same concept is supported in 24 Am. Jur.2d, *Divorce and Separation*, § 677 (1966), at page 795:

"Where the modification is sought by the husband, it should be made to appear that he himself has not caused or contributed to the existence of the grounds whereon the alteration is sought. A self-induced decline in the husband's income does not, in the absence of a substantial showing of good faith or cause therefor, constitute such an exceptional change in circumstances as to afford the required basis for modifying an alimony award."

Volume 24 Am.Jur.2d, *Divorce and Separation*, § 680 (1966), at page 798, states:

"Assuming that a reduction in payments is proper where the wife has secured employment, the court will not ordinarily reduce the payments in the exact amount of her earnings, for that would take away her incentive to work. If the improvement in the wife's earnings is only temporary, the court may refuse to consider it a ground for reducing alimony."

These concepts have been generally followed by our Court in *Bridgeford v. Bridgeford,* 281 N.W.2d 583 (N.D.1979) [change in financial circumstances of wife because of increased income did not justify reduction of spousal support because wife's reasonable monthly expenditures exceeded her monthly income]; *Bingert v. Bingert,* 247 N.W.2d 464 (N.D.1976) [increase in income because wife took second job babysitting to supplement earnings during period when spousal support was not paid was not entitled to favorable judicial recognition for

reduction of spousal support]; and *Foster v. Nelson,* 206 N.W.2d 649 (N.D.1973) [change of condition voluntarily assumed by a divorced husband by remarriage did not authorize a modification of child support payments in the divorce decree].

■ The underlying legal principle governing change in circumstances affecting child or spousal support payments is equity, which necessarily brings into focus the concept that he who seeks equity must do equity. Changes in circumstances which make it equitable to reduce or increase spousal or child support are entitled to judicial recognition.

In all of these matters both the constitutional rights of the children and of the parents must be considered and balanced. To accomplish this, courts have the authority to employ contempt powers to compel compliance with its orders. NDCC § 14–08–07.

With these comments in mind, we turn to the instant case. The original judgment provided, in relevant part, as follows:

"The Court determines that the Defendant [Wayne] has sufficient earning ability, present and anticipated, and the Plaintiff [Carol] has limited earning ability. Therefore, it is ordered that the Defendant pay to the Plaintiff by way of spousal support, the sum of $150.00 per month, the first payment of which commences April 1, 1981, said payments to continue through April 1, 1986, or until remarriage of the Plaintiff, whichever event occurs first."

■ The lower court essentially found that the change in circumstances was the employment and increased income of Carol. The lower court also found that the income of Wayne had remained approximately the same with expectations for an increase if the normal pattern developed. The amended judgment, in relevant part, essentially tracked the language of the original judgment except for the substitution of $50.00 per month for $150.00 per month and for the termination period for spousal support.

Although the lower court did not make detailed findings, it is apparent that the lower court relied solely upon Carol's employment and increase in income as a change in circumstances. An exhibit introduced at the original divorce proceedings reflects that, at that time, Carol was earning approximately $200.00 a month at her part time job. Carol testified at the hearing on the motion to amend the judgment that at the time of the divorce she was working part time for a janitorial service for approximately $300–400 a month. No finding of fact was made concerning her income at the time of the divorce either at the initial proceedings or at the motion to amend the judgment. In any event, Carol testified at the hearing on the motion to amend the judgment that she was now making $750.00 a month as a secretary.

In this instance, consideration must be given to the circumstances which wholly or partially triggered Carol's employment and increase in salary. The original divorce decree provided that Carol would have occupancy and possession of the parties' home and that she was responsible for the mortgage payment and "related escrow payments."[1] The decree further provided that upon sale of the home, she would receive sixty percent of the net proceeds. Thus Carol was required to use her income to make house payments (approximately $500.00 a month) but upon sale of the house she would receive only sixty percent of the net proceeds.[2]

1. The judgment does not explain what is included in the term "related escrow payments." As we understand the term, unless otherwise explained, it includes payments for insurance premiums and taxes. Nothing is specifically stated regarding payments for upkeep and repair. If these items are all included in the phrase "related escrow payments," Carol could have considerable expenses over and above the spousal support she received, and yet the equity distribution does not fully reflect that. Also, the change in spousal support did not modify or mention the equity distribution which appears to be an integral part of the initial package set out in the original judgment.

2. The judgment did not specifically provide that Wayne would receive the remaining forty percent of the net proceeds; however, both

In order to make the house payments, as well as handling the other expenses of day-to-day living with three children, we believe it was necessarily contemplated at the time of the original divorce that Carol would seek employment to bolster her financial situation. We do not believe that an increase in salary of between $350 to $550 a month was a change in circumstances to justify a reduction of spousal support, especially in view of the fact that Wayne was accumulating forty percent of the equity in the house because of payments made by Carol with her income (*i.e.*, salary, spousal and child support, and rental income).

We recognize that the testimony at the hearing on the motion to amend the judgment was not significantly developed in several areas nor was it disputed. From this, we conclude that the difference in Carol's current income from her income at the time of the divorce decree, when considered with her expenses and Wayne's accumulating equity in the house, is not so great as to alleviate Wayne's payment of the $150.00 a month for spousal support.

Accordingly, we conclude the lower court erred in reducing the spousal support paid by Wayne, and we reverse with instructions to vacate the amended judgment and reinstate the original judgment.

ERICKSTAD, C.J., and VANDE WALLE, PEDERSON and PAULSON, JJ., concur.

---

parties' briefs reflect that Wayne would receive forty percent of the net proceeds if the house was sold. See *Clark v. Clark*, 31 N.W.2d 277 (N.D.1983) for a discussion of division of equity in a house.