Rosalie G. LIPP, Plaintiff and
Appellant,

v.

William V. LIPP, Defendant
and Appellee.

Civ. No. 10688.

Supreme Court of North Dakota.

Oct. 23, 1984.

Pancratz, Yuill, Wold, Johnson & Feder, Fargo, for plaintiff and appellant; argued by Robert A. Feder, Fargo.

Schneider, Schneider & Schneider, Fargo, for defendant and appellee; argued by John T. Schneider, Fargo.

SAND, Justice.

Rosalie G. Lipp (Rosalie) appealed from an amended judgment which reduced the amount of "alimony" payable to her from her former husband, William V. Lipp (William).

Rosalie and William were married in 1959 and divorced in 1979. The divorce judgment incorporated a property settlement agreement executed by the parties which set out the terms of child custody and support, property division, and "alimony." At the time of the divorce Rosalie and William lived in the family home with their two minor children. The divorce judgment allowed Rosalie and the children to reside in the home but required the parties to retain ownership of the residence as joint tenants. Rosalie was liable for the mortgage payments, taxes, maintenance and insurance on the home. William's monthly "alimony" payments were set at $100 less than the monthly mortgage payments of $479.

Four years after the divorce William moved to modify the original judgment to reduce his "alimony" payments on the ground that a material change in circumstances had occurred between the parties. Rosalie opposed the motion and alleged William was in arrears in "alimony" and should not be allowed to seek modification of the original judgment. The matter was heard by a referee pursuant to North Da-kota Rule of Civil Procedure 53. Although the referee did not rule directly on the issue of William's arrears, he nevertheless implicitly treated the "alimony" payments as spousal support and therefore were modifiable according to North Dakota Century Code § 14-05-24. The referee determined a material change in circumstances had occurred because the parties' respective incomes had become largely equalized since the divorce. The referee's decision, as affirmed by the district court, amended the original judgment by reducing William's "alimony" payments to one-half of the monthly payment on the mortgage *principal.*

Rosalie raised several issues on appeal but the primary question is whether or not a material change in circumstances had occurred to justify the amendment of the original judgment.

■ In granting the modification the referee and the court relied heavily upon the earning capacity of the individuals since the divorce. However, we believe that the "picture" as a whole must be considered in resolving this issue. See *Muehler v. Muehler,* 333 N.W.2d 432 (N.D.1983).

During the first seven of the parties' twenty-year marriage, and through the birth of their two children, Rosalie was the family's primary source of income. During this period Rosalie was employed as a full-time registered nurse while William attended school and acquired his bachelor's and master's degrees. At the time of the divorce Rosalie's income was approximately $17,000, and William's was $19,809. Following the divorce Rosalie returned to graduate school, obtained a master's degree in nursing administration, and then worked for the Veterans Administration. William continued to work for the Fargo Public Schools, and remarried. Following the modification hearing the referee concluded William and Rosalie were earning $26,779.08 and $29,000.00, respectively. The referee attributed Rosalie's increase in income to her earning a master's degree. Based on these factual findings the referee

concluded a material change in circumstances had occurred since the divorce because the parties' incomes were largely equalized and also because Rosalie's rehabilitation had taken place. The referee's decision, as affirmed by the district court, amended paragraph 5 of the original judgment to read in part:

"That effective October, 1983, the Defendant shall pay to the Plaintiff as and for alimony, on the First of each month, an amount equal to One-half (½) of the monthly payment, on principal only, to the mortgagee of the parties' home . . . ."

According to the original judgment William paid $100 less than the monthly payment on the mortgage principal and interest. The amended judgment required William to pay one-half of the monthly payments on the mortgage *principal* whereas the original monthly payments included interest payments. The amended judgment reduced William's monthly "alimony" payment from $379.00 to approximately $22.00.[1] However, William continued to retain a fifty percent equitable interest in the home as a joint tenant.

Before a divorce judgment may be modified the party seeking the modification, here William, must demonstrate a *material* change in circumstances has taken place. *Muehler v. Muehler*, 333 N.W.2d 432 (N.D.1983). In general, a self-induced change in circumstances, such as remarriage, *Foster v. Nelson*, 206 N.W.2d 649 (N.D.1973), does not constitute a valid ground for modification. *Muehler, supra* at 434.

In this case the referee concluded the relative equalization of the parties' incomes, and Rosalie's rehabilitation, comprised a material change in circumstances. To reach this conclusion it appears the referee merely took into account that since the divorce Rosalie's income had increased more rapidly than had William's. Although changes in the financial abilities or needs of the parties is a principal concern

in the context of a motion to modify a divorce judgment, *Bingert v. Bingert*, 247 N.W.2d 464, 467 (N.D.1976), the inquiry needs go beyond the simple fact that a change in the parties' incomes has occurred. The initial finding of a change in circumstances is not an end in itself but triggers further inquiry to determine what brought about the change. The type of change would then govern a further inquiry. *Muehler, supra* at 434. The bare fact that Rosalie's income increased since the divorce does not alone constitute a material change in circumstances. *Muehler, supra*. A determination of the factors which caused Rosalie's income to increase was necessary. Here Rosalie improved her earning capacity by returning to school, acquiring a master's degree and then securing a higher level of professional employment with a concomitant increase in salary. To hold that such personal accomplishment constituted a change in circumstances so as to allow a reduction of William's "alimony" payments would penalize Rosalie for her initiative and remove the incentive for self betterment. *Muehler, supra* at 434. The inequity of such result is compounded by the fact that, although the modification significantly reduced William's "alimony" payments, he nevertheless retained a fifty percent equitable interest in the home. In the past this Court has disapproved of similar arrangements. See *Muehler, supra* at 435–6; *Clark v. Clark*, 331 N.W.2d 277 (N.D.1983).

In this instance no material change in circumstances occurred and the trial court's finding resulting in the amendment of the original divorce judgment was clearly erroneous. *Jondahl v. Jondahl*, 344 N.W.2d 63, 67 (N.D.1984).

It is also questionable whether or not William's monthly "alimony" payments constituted spousal support and thus were subject to modification pursuant to NDCC § 14–05–24. Because William's payments

---

**1.** William's monthly payments would gradually increase to a high of $154.00 as the mortgage principal payments increased.

were clearly tied to the mortgage payments it suggests that they were in reality payments on a property division rather than spousal support. Paragraph 5 of the original judgment read in part:

"Defendant shall pay to Plaintiff as and for alimony on the first of each month an amount equal to one hundred dollars less than the monthly payment the parties now make to the mortgagee of the parties home. The mortgagee currently receives $479 a month from the parties as and for mortgage payments, taxes, and insurance. In the event that these charges are increased or decreased, they will automatically increase or decrease accordingly the amount of alimony from Defendant to Plaintiff. Such alimony shall continue until the death or remarriage of Plaintiff."

■ Apparently, paragraph 5 was intended to give the parties the most favorable federal income tax treatment available. However, federal tax matters are generally not within the jurisdiction of courts which have jurisdiction over domestic matters. *Briese v. Briese,* 325 N.W.2d 245, 248 (N.D.1982); *Fraase v. Fraase,* 315 N.W.2d 271, 278 (N.D.1982) (Sand, J., special concurrence). Accordingly, we will not speculate about the possible federal tax implications in this matter.

The apparent problem in paragraph 5 is the unqualified use of the term "alimony." "Alimony," as used in paragraph 5, does not indicate if William's payments were part of a property division or were for spousal support and consequently, it is difficult to ascertain if they were subject to modification. See *Seablom v. Seablom,* 348 N.W.2d 920, 924 (N.D.1984).

The North Dakota Century Code does not define the term "alimony." The term is used in connection with child support in §§ 11–16–01, 14–03–17, 14–08–07, and 14–12.1–24; with maintenance of either spouse in § 14–05–25, and with demands for change of judge in § 29–15–21. The term appears in conjunction with security requirements for support or maintenance in

§ 14–05–25, decrees of separation in § 14–06–05, and assignments under the Uniform Crime Victims Reparation Act in § 65–13–15. Finally, in § 14–05–24 the term appears as "Permanent alimony" but only in the headnote.[2]

■ Case law provides scant assistance in determining what the term "alimony" means in North Dakota. See *Seablom, supra, Coulter v. Coulter,* 328 N.W.2d 232 (N.D.1982), *Urlaub v. Urlaub,* 325 N.W.2d 234 (N.D.1982), *Rust v. Rust,* 321 N.W.2d 504 (N.D.1982), and *Jochim v. Jochim,* 306 N.W.2d 196 (N.D.1981). We believe the term "alimony" as used in North Dakota statutes and case law is used in a generic sense and means any payment to be made to the other spouse for any purpose, including payment as a part of a property division, spousal support, or child support or a combination of any of them. Thus, the use of the term "alimony" in the divorce judgment without specifying or qualifying its application concerning property division, spousal support, rehabilitation, or child support leaves much to speculation as to what statutory provisions and law applies. In this case the problems which result from the unqualified use of the term "alimony" are apparent. It is not clear if the parties intended the term "alimony" to represent spousal support or payments on a property division. In attempting to clarify such ambiguity it is helpful to distinguish the respective functions of property division and spousal support.

A division of property is based upon each spouse's respective rights to an equitable share of property which has been accumulated during the marriage by the parties' joint effort for their mutual benefit. *Williams v. Williams,* 302 N.W.2d 754, 758 (N.D.1981). In contrast, spousal support serves various functions of rehabilitation and providing maintenance to a spouse incapable of rehabilitation. *Seablom, supra* at 924. See also O'Kelly, *Three Concepts of Alimony in North Dakota,* 1 U.N.D. Faculty Journal 69 (1982).

2. Pursuant to NDCC § 1–02–12 the headnote is not part of the statute.

In the instant situation William's monthly payments advance the purposes of the property division rather than spousal support. The monthly payments were closely tied to the mortgage payments on the parties' principal marital asset, the house. Rosalie received the "alimony" and was then responsible for the mortgage payments. William made the "alimony" payments and retained a fifty percent equitable interest in the house. Therefore, the "alimony" payments function to maintain both parties' interests in the house, the primary asset distributed through the property division. This is conversely analogous to the situation where one spouse retains control of property which has been constructively divided, paying a cash equivalent to the other spouse in lieu of transferring the property. See, e.g., *Rudel v. Rudel*, 279 N.W.2d 651 (N.D.1979); *Matter of Estate of Gustafson*, 287 N.W.2d 700 (N.D.1980); *O'Kelly, supra* at 70.

The fact that monthly payments suggests spousal support, *Sinkler v. Sinkler*, 49 N.D. 1144, 194 N.W. 817 (1923), as does the termination of "alimony" upon Rosalie's death or remarriage,[3] *Coulter, supra* at 240, are just that, merely suggestions of spousal support. See *Seablom, supra* at 924. To be spousal support a provision in a divorce judgment must effectuate the purposes of spousal support, such as rehabilitation or maintenance. *Seablom, supra* at 924. Here, Rosalie's need for rehabilitation or maintenance is problematic.[4] At the time of the divorce Rosalie was a registered nurse and capable of supporting herself and children. The evidence did not indicate that she was in need of rehabilitation. Rather, the evidence supports a conclusion to the contrary. Furthermore, there was no specific time when the "alimony" payments would cease on the presumption that Rosalie would be deemed to have been rehabilitated. See *Williams, supra,* and *Smith v. Smith*, 326 N.W.2d 697 (N.D.1982). Consequently, the term "alimony" as used in the property settlement, and merged into the divorce judgment, does not seem designed to effectuate the purposes of spousal support. Instead, the "alimony" payments are equally or more readily identified as periodic payments on the property division.

Despite that the monthly payments better served to effectuate the property division, William argued when the intent of a contract is uncertain, as it is here, the contractual language should be interpreted most strongly against the party who caused the uncertainty to exist. *Dvorak v. Dvorak*, 329 N.W.2d 868, 870 (N.D.1983); NDCC § 9–07–19. Because Rosalie's attorney drafted the property settlement agreement William contended the "alimony" should be interpreted as spousal support. However, NDCC § 9–07–19 is activated only when the contractual uncertainty cannot be removed by other statutory rules of construction. See NDCC §§ 9–07–01 through –18. Here the uncertainty is eliminated by interpreting the term "alimony" pursuant to NDCC § 9–07–12, which reads:

> "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates."

In this case, as demonstrated in the previous discussion, the ambiguity caused by the term "alimony" is clarified by taking into account the matter to which the "alimony" relates: maintaining the parties' equity in the house. Again, the need to resort to statutory rules of contract interpretation would be greatly reduced if the term "alimony" was used with the appropriate specificity as to purpose. However, because no material change in circumstances between the parties occurred we are not

---

3. The divorce judgment failed to expressly contemplate what was to occur when the mortgage was satisfied. We can only assume that because William's monthly payments were $100 less than the mortgage payments, that when the mortgage payments were zero, so would be his monthly payments.

4. The referee stated in his conclusions of law that "... the rehabilitation of [Rosalie], if any was necessary, has taken place."

required to definitely determine if William's payments constituted spousal support or part of a property division.

The final issue presented by this appeal concerned William's alleged arrears. The actual amount of "alimony" the divorce judgment required William to pay was $379 per month. However, from the time of the judgment until it was amended, with the exception of July and August 1983, William made monthly payments of $400.00, or $21.00 more than the judgment required. William failed to make payments in July and August 1983.

After William moved to amend and modify the original judgment, Rosalie in response asserted he was in arrears and should not be allowed to seek a modification of the original judgment. See *Kack v. Kack*, 169 N.W.2d 111 (N.D.1969). William argued that his aggregate monthly overpayments of $21.00 compensated for the two months he failed to make any payments, and accordingly, he was not in arrears. Rosalie contended the monthly $21.00 overpayment was a "gift" from William and could not be considered "alimony." Therefore, Rosalie claimed William was in arrears for July and August 1983.

The referee's findings, as adopted by the district court, did not directly rule on the question of William's arrears. Rather, the referee made the following conclusion of law: "That the Defendant [William] shall forthwith bring current any accrued alimony payments which may presently be delinquent."

■ Although the proceedings below did not explicitly resolve the matter of William's arrears the $21.00 monthly overpayments were implicitly not found to be "gifts" and this determination is not clearly erroneous. *Jondahl, supra* at 67.

Having determined that no material change in circumstances occurred, we conclude the lower court erred in reducing William's "alimony" payment and accordingly we reverse with instructions to vacate the amended judgment and reinstate the original judgment.

ERICKSTAD, C.J., and GIERKE, PEDERSON and VANDE WALLE, JJ., concur.