**Lon COOK, Plaintiff and Appellee,**

v.

**Christine COOK, Defendant and Appellant.**

**Civ. No. 10689.**

Supreme Court of North Dakota.

March 13, 1985.

Solberg, Stewart, Boulger & Miller, Fargo, for plaintiff and appellee; argued by John V. Boulger, Fargo.

Mack, Moosbrugger, Ohlsen & Dvorak, Grand Forks, for defendant and appellant.

ERICKSTAD, Chief Justice.

■■■■ Christine Cook appeals from an order of the district court of Cass County accepting a referee's findings of fact and conclusions of law which granted a motion by Lon Cook for modification of a judgment and decree of divorce.[1] We affirm.

Christine Cook and Lon Cook were granted a divorce by the district court on March 31, 1982. The divorce judgment provided in part, pursuant to a "property settlement agreement" incorporated into the judgment by the court, that Christine have sole custody of the parties' two children and that Lon pay to Christine, "for alimony and child support," $1,000 per month commencing on April 1, 1982, reduced to $400 per month commencing on June 1, 1982, and reduced to $200 per month commencing on August 1, 1988. The judgment provided that Christine's remarriage would not alter these payments. The payments were to cease upon the death of either party, or no later than December 1, 1992.

On September 27, 1983, Lon filed a motion for modification of the divorce judgment due to an alleged material change in

---

1. Christine's notice of appeal reads:
   "[T]he Defendant hereby appeals ... from the decision of John A. Dietz, Juvenile Supervisor and Referee dated December 23, 1983, and from the decision of Norman J. Backes, Judge of the District Court, dated February 27, 1984."
   Lon contends that the appeal should be dismissed "for failure to appeal from a judgment or decree."
   A memorandum opinion or findings of fact, conclusions of law, and an *order* for judgment are generally not appealable. *Fey v. Fey*, 337 N.W.2d 159 (N.D.1983); *Chas. F. Ellis Agency, Inc. v. Berg*, 214 N.W.2d 507 (N.D.1974). In this case the referee's findings of fact and conclu-sions of law direct that the judgment and decree of divorce "shall be Modified as follows," and sets forth therein the judgment in modified form. Neither the referee's findings nor the district court's order affirming those findings contains an order for judgment or specifically directs the attorney for the prevailing party to prepare an amended judgment apart from that which is already contained in the referee's findings of fact and conclusions of law. It is clear that the district court intended that its order accepting the referee's findings of fact and conclusions of law, which arguably contain an amended judgment, be its final order. We conclude that the appeal is properly before us.

his financial condition. Specifically, he requested that the required payments be reduced from $400 to $200 per month. In an affidavit in support of his motion, Lon indicated that he had become unemployed in June 1983, and had thereafter sought unsuccessfully to gain employment in the field of grain marketing, his area of expertise. Lon asserted that due to the reduction in his income, he could no longer afford to pay Christine $400 per month. He listed his basic monthly expenses at $1,574, which did not include the payment to Christine or a monthly $200 child support obligation arising from a previous marriage.

The district court referred the motion to a referee pursuant to Rule 53, N.D.R.Civ.P. Following a hearing held October 14, 1983, the referee prepared findings of fact and conclusions of law which modified the divorce judgment to require Lon to pay alimony and child support of $200 per month commencing November 1, 1983. Christine requested that the referee's findings of fact and conclusions of law be reviewed by the district court and, on February 27, 1984, the court determined that the findings of fact and conclusions of law of the referee were not clearly erroneous.

Christine's sole argument on appeal is that Lon has failed to show a *permanent* change in financial circumstances.

■ A divorce judgment providing for child and spousal support[2] payments, even though based on an agreement between the parties, may be modified upon a showing of a *material* change in circumstances. *Skoglund v. Skoglund*, 333 N.W.2d 795, 796 (N.D.1983); *Clement v. Clement*, 325 N.W.2d 262, 263 (N.D.1982); *Eberhart v. Eberhart*, 301 N.W.2d 137, 143 (N.D.1981).

■ We have said that a "change in circumstances" in the context of consideration of a motion to reduce spousal support, means a change which affects the financial abilities or needs of one party or the other. *Muehler v. Muehler*, 333 N.W.2d 432, 433

(N.D.1983), quoting *Bingert v. Bingert*, 247 N.W.2d 464, 467 (N.D.1976). Similarly, a "change in circumstances" with reference to a modification of child support payments is one based primarily on a change in financial circumstances. When changed circumstances are based on a change in financial circumstances, the needs of the supporting spouse and his or her ability to pay, as well as the needs of children and the dependent spouse, must be taken into account in determining the amount of child support to be paid. The ability to pay support is not necessarily determined, however, solely on the basis of income earned. A party's net worth, including the extent of his or her physical assets and earning ability as demonstrated by past income, must be taken into consideration. *Burrell v. Burrell*, 359 N.W.2d 381, 383 (N.D.1985); *Skoglund*, 333 N.W.2d at 796; *Corbin v. Corbin*, 288 N.W.2d 61, 66 (N.D.1980).

■ Within these concepts, consideration must also be given to what brought about the change of circumstances and whether or not the change was contemplated at the time of the original divorce decree or previous modifications. *Muehler*, 333 N.W.2d at 434.

The following is a summary of the referee's undisputed findings of fact: At the time of the parties' divorce, Lon had an annual income of $30,000 and a monthly net income of $1,843.63. Lon's employer, Agra-Sun Enterprises, Inc., of which he was President, experienced financial difficulties and is no longer in operation. Lon has not received a salary since May 1983, but has received since August 1983, unemployment benefits of $168 per week. The referee listed assets owned by Lon totaling $3,751, none of which, other than a boat, motor, and trailer valued at $1,000, are readily convertible into cash. On August 29, 1983, Lon filed a petition for relief under chapter 7 of the bankruptcy code.

---

**2.** The referee implicitly treated the undelineated "alimony" part of Lon's monthly obligation as modifiable spousal support and, as no contention is made by Christine to the contrary, we

will assume the entire obligation is modifiable. *See Lipp v. Lipp*, 355 N.W.2d 817, 818 (N.D. 1984).

The following are additional findings of the referee regarding Lon's financial circumstances:

"Lon Cook is currently unemployed and is seeking employment, with the first prospects of employment appearing to be on approximately January 1, 1984, at a starting compensation anticipated to be approximately $20,000.00 per year; that the foregoing is, however, entirely speculative.

    \*      \*      \*      \*      \*      \*

"That Lon Cook does not have the ability to make payment of the arrearages in child support and alimony [$1,600 computed through October, 1983] at this time; that it is anticipated by the Plaintiff that by July of 1984, he should have the ability to make payment of the arrearages at the rate of $100.00 per month; that once again, the repayment proposal is entirely-speculative, based on employment which has not yet been secured.

"That Lon Cook has demonstrated to the Court that he was unable to make the payment of alimony and child support from July of 1983, through October of 1983.

"That Lon Cook's unemployment appears to be temporary, but at the time that it is resumed he anticipates that he will be making $20,000.00 per year, substantially-less-than the $30,000.00 which he was making at the time of the Divorce; this is, once again, entirely-speculative."

Christine received a monthly income from weaving of approximately $200 at the time of the parties' divorce, and such income has increased by approximately $100 per month. Christine has remarried[3] and the monthly net income of her and her spouse is $2,148. The referee found that Christine's increased expenses relating to the children were no greater than should

have been expected by the parties at the time of the divorce.

The referee concluded that there had been a substantial and material change in the financial condition of Lon since the time of the divorce. It was also determined that there had been a slight improvement in the financial condition of Christine and that her day-to-day needs were being "substantially subsidized by her present husband."

Circumstances similar to this case were before this Court in *Hoster v. Hoster*, 216 N.W.2d 698 (N.D.1974). In *Hoster*, we ordered that child support and alimony payments be reduced, even after the district court had refused to do so, because the supporting spouse, Mr. Hoster, was financially unable to comply with the terms of the divorce judgment. *See also Larson v. Larson*, 234 N.W.2d 861 (N.D.1975). Mr. Hoster lost a part-time job resulting in a forty percent reduction in his monthly income. This left him, after paying the alimony and child support he was required to pay, with a deficit income. Mrs. Hoster argued, in part, that Mr. Hoster's change in financial circumstances was only temporary, to which this Court responded:

"Assuming that Mrs. Hoster's arguments have merit, we nevertheless cannot escape the fact that, at the time of the [modification] hearing [held in August or September 1973], Mr. Hoster was financially incapable of complying with the terms of the divorce decree and that, under Mrs. Hoster's contentions, such inability would continue at least until the Spring of 1974." 216 N.W.2d at 703.

In *Schnell v. Schnell*, 252 N.W.2d 14, 20 (N.D.1977), this Court said the following about the *Hoster* and *Larson* cases:

"In *Hoster* and *Larson*, it [the reducing of alimony and support by this Court] was based upon changes of circumstances which made it extremely difficult or

---

**3.** Lon does not argue that Christine's remarriage creates a *prima facie* case requiring the court to terminate spousal support payments in the absence of extraordinary circumstances, nor did the referee so conclude. *See Bauer v. Bauer*, 356 N.W.2d 897, 898 (N.D.1984); *Nugent v. Nu-*

*gent*, 152 N.W.2d 323, 327 (N.D.1967). That this was the parties' intent is supported by the parties' agreement, as incorporated in the judgment of divorce, which provided that Christine's remarriage "shall not ... alter any effect on these payments."

impossible for the spouse paying the alimony and support money to provide for his own needs after support and alimony payments had been paid."

In *Schnell*, we held that a substantial drop in a divorced spouse's income, which could be varied from year to year by management decisions, was no reason to reduce alimony or child support. We noted in *Schnell* that a reduction in income arising under such circumstances did not prove "a permanent or long-term loss of ability to pay alimony or support, as was evident in *Hoster* and *Larson*." *Id.*

■ In *Burrell*, 359 N.W.2d 381, we distinguished *Hoster* in affirming the trial court's denial of the supporting spouse's motion to modify and reduce child support payments after he was laid off from his job as a pipefitter due to lack of work. We said:

"After reviewing the facts of *Hoster*, we note that the decrease in income was somewhat permanent in nature, or at least projected by both parties to be of long duration. The trial court had granted the parties a divorce in June 1973. The supporting spouse had a 40-percent reduction in income approximately one month later and in August he moved the trial court for modification of the divorce decree. On appeal from the trial court's denial of the request for modification we determined that the supporting spouse's inability to pay would continue until at least the spring of 1974.

"*Hoster, supra,* can thus be distinguished from the case at bar where the reduction in income was arguably temporary in nature at the time of the hearing. The trial court was presented with evidence during the divorce proceedings indicating that Steven's job as a skilled pipefitter frequently involved periods of unemployment. The trial court could properly have decided that a reduction of child-support payments only six days after the divorce judgment was entered would open the door for a request for modification each time Steven was between jobs. Thus, by the time the request for modification could be heard by the trial court, ruled on, and possibly appealed, Steven could possibly be re-employed as a pipefitter at another job." 359 N.W.2d at 383–84.

Having reviewed our prior decisions and the entire record in this case, we are not left with a definite and firm conviction that a mistake has been made. Rule 52(a), N.D. R.Civ.P.; *Jondahl v. Jondahl*, 344 N.W.2d 63, 67 (N.D.1984). There is no evidence or contention that Lon's loss of employment and reduction in income was voluntary, nor is there any contention that the reduction was not substantial. *Hoster*, 216 N.W.2d at 701. It is apparent that Lon's unemployment, unlike the situation in *Burrell*, was the result of economic conditions and a circumstance apparently not contemplated by the parties at the time of the original divorce decree. The referee could very reasonably have concluded that at the time of the modification hearing, it was extremely difficult, if not impossible, for Lon to make the support payments from unemployment compensation or from assets available to him, and then provide for his own needs. In light of his filing in the bankruptcy court it is highly unlikely that he could have borrowed funds to make the original payments. In our view, the facts of this case disclose more than a temporary loss of ability to pay.

Accordingly, we affirm the district court's order accepting the referee's findings of fact, conclusions of law, and modification of the divorce judgment.

VANDE WALLE and GIERKE, JJ., and PEDERSON, Surrogate Justice, concur.

Surrogate Justice PEDERSON participated in this case by assignment pursuant to § 27–17–03, N.D.C.C.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.