**Dorothy Ann PENUEL, Plaintiff
and Appellee,**

v.

**James Jethro PENUEL, Jr.,
Defendant and Appellant.**

**Civ. No. 870087.**

Supreme Court of North Dakota.

Nov. 19, 1987.

Leslie Johnson–Soetebier, Legal Assistance of North Dakota, Fargo, for defendant and appellant.

Conmy, Feste, Bossart, Hubbard & Corwin, Ltd., Fargo, for plaintiff and appellee; argued by Kim E. Brust.

ERICKSTAD, Chief Justice.

James Jethro Penuel, Jr., appeals from an order denying his motion for modification of a 1974 judgment and divorce decree. James Penuel's request for a reduction of child support payments and spousal support payments was denied after the trial court concluded "[t]here has been no material change of circumstances in connection with the financial needs of Laurie or Dorothy.... There has been no material change of James' circumstances to such an extent as to justify a modification of the obligations ... [James] undertook in connection with the execution of the property settlement agreement which was incorporated in the judgment and decree herein." We affirm.

Dorothy Ann Penuel and James Jethro Penuel, Jr., were married for 27 years before their divorce on April 11, 1974. During their marriage, James and Dorothy had three children. Their youngest child, Laurie Ann, was 16 years old at the time of their divorce. Laurie Ann was involved in a serious accident which left her permanently paralyzed from the neck down when she was 15 years old. Since the accident, Laurie Ann has required extensive medical treatment. Currently 29 years old, Laurie Ann has been receiving care at the United Hospital in Grand Forks since April of 1986.

In March of 1985, James suffered a stroke which left him partially paralyzed and unable to work. James is 63 years old and has no realistic expectation of returning to work. He resides at the Eventide Lutheran Home in Moorhead, Minnesota. Shortly after the divorce, James remarried. His present wife is employed as a secretary at Moorhead State University.

Dorothy lives and works as a secretary in Grand Forks, North Dakota. She has absorbed some of Laurie Ann's health care costs which were not paid for by federal welfare programs. Dorothy is single and 63 years old.

An agreement incorporated into the 1974 divorce decree requires James to pay $200 per month for the support of Laurie Ann and $75 per month for spousal support to Dorothy. After his stroke, and approximately 12 years after the divorce, James requested a modification of the divorce decree. Specifically, James sought a reduction of the $200 per month child support payment and the elimination of the $75 per month spousal support payment. James and Dorothy's agreement provided that Laurie Ann's support payment would continue until Laurie Ann could provide for herself and that Dorothy's spousal payment would continue until death or remarriage. The agreement further required James to maintain a life insurance policy in which Dorothy was trustee and Laurie Ann the beneficiary.

The parties are in substantial agreement as to the amounts on their personal balance sheets. James Penuel was earning $16,000 per year at the time of the divorce in 1974; $25,000 per year before his stroke in 1985; and $20,000 per year ($1,673 per month) after his stroke. James and his wife have a savings account balance of $1,900, and James has two annuities worth approximately $21,000. One annuity for $14,930.65 bears interest at 9.6 percent per annum, and the other annuity for $6,173.59 bears interest at a variable rate of approximately 9 percent per annum. He pays approximately $1,200 per month for the costs of physical therapy and nursing home care.[1]

James will lose $382 of his $1,672 monthly income when he turns 65. He will also lose an additional unspecified amount of his monthly income. James' wife earns $800 per month.

Dorothy is currently earning $20,200 per year ($1,682 per month or take home pay[2] of $1,257.80 per month.) Her own monthly

---

1. James states his nursing home cost is $1,124 and physical therapy is $408. James acknowledges, however, that 80 percent of the physical therapy cost is paid by his insurer. Dorothy disputes James' health care costs.

2. The trial court found Dorothy was earning $1,257.80 per month in "net income." We assume the trial court's definition of "net income" is the same as "net pay" or "take home pay."

expenses are $1,087.06 per month. Dorothy also incurred expenses of $4,900 as a result of Laurie Ann's surgery and hospitalization in Rochester, Minnesota. Dorothy has $2,000 in a savings account.

Laurie Ann's monthly income and expenses are in dispute. The Trial court found Laurie Ann's monthly income to be $571: $200 from child support and $371 from social security payments. The trial court determined Laurie Ann's expenses were $702 per month.

James contends the trial court's computation of Laurie Ann's expenses is erroneous because they are based on expenses incurred at the nursing home, Laurie Ann's temporary home. Thus, James argues Laurie Ann's temporary stay at the nursing home is not an accurate measure of her long-term expenses. Dorothy does not specifically address this argument, but maintains that Laurie Ann's expenses have not decreased since the 1974 divorce judgment and decree. James also challenges the trial court's conclusion that his change in circumstance does not warrant modification of his child support or spousal support payments.

We have repeatedly declared that determinations of child and spousal support are questions of fact subject to the "clearly erroneous" standard of Rule 52(a), N.D.R. Civ.P. *Bagan v. Bagan*, 382 N.W.2d 645 (N.D.1986) (child and spousal support); *Routledge v. Routledge*, 377 N.W.2d 542 (N.D.1985) (spousal support); *Smith v. Smith*, 326 N.W.2d 697 (N.D.1982) (child support). A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Heller v. Heller*, 367 N.W.2d 179 (N.D.1985); *Kostelecky v. Kostelecky*, 251 N.W.2d 400 (N.D.1977).

A party who requests modification of child support must make a showing of changed conditions or circumstances. *Corbin v. Corbin*, 288 N.W.2d 61, 66 (N.D. 1980); *Foster v. Nelson*, 206 N.W.2d 649,

651 (N.D.1973). While the "clearly erroneous" standard of Rule 52(a) of the North Dakota Rules of Civil Procedure does not appear to apply to motions, it does apply to a motion to modify a divorce decree. *Corbin, supra* at 65. Review of the trial court's denial of James' motion for modification is accordingly limited.

We cannot say the trial court's findings of fact are clearly erroneous with respect to the parties' incomes and expenses. James contends the trial court erred by "not properly considering the Blue Cross/Blue Shield, Laurie Ann's Social Security, and Medical Assistance Payments." The trial court's finding of fact no. 9, however, plainly acknowledges that Laurie Ann has social security income of $371 per month. James also asserts that federal welfare programs pay for all of Laurie Ann's medical care, including "television" costs. The apparent thrust of James' argument is that the deep pockets of the federal government will bear the extra cost of Laurie Ann's care to the extent we relieve him from it. True as that may be, it is not a principled legal argument for shifting the burden from James, an individual responsible for Laurie Ann's care under our state law as construed by the trial court.

The trial court found that Laurie Ann's condition imposed "extraordinary expenses" in excess of $4,900 on Dorothy.[3] The "extraordinary expenses" were incidental to Laurie Ann's surgery in Rochester, Minnesota, although they were not the costs of the surgery or the hospitalization. The trial court found Laurie Ann would probably have to return to Rochester for more surgery.

Severely handicapped since the age of 15, Laurie Ann derives little serenity from her circumstances. Laurie Ann is dependent on medical science, yet it cannot eliminate her paralysis. Dorothy testified that Laurie Ann finds comfort in material goods such as clothing. These circumstances lend support to the trial court's conclusion

---

**3.** Although the trial court did not allude to air ambulance costs in its memorandum opinion, Dorothy introduced evidence which suggested she would bear a part of those costs.

that Laurie Ann's financial needs have not materially changed.

James cites us to *Larson v. Larson*, 234 N.W.2d 861 (N.D.1975); *Hoster v. Hoster*, 216 N.W.2d 698 (N.D.1974); and *Peterson v. Peterson*, 131 N.W.2d 726 (N.D.1964), in support of the contention that his change of circumstances warrants a reduction of child and spousal support.

We concluded in *Larson* and *Hoster* that the husband did not have the ability to meet the financial burdens imposed by the terms of the divorce decree. James' current financial condition is clearly distinguishable from the facts of *Larson, Peterson*, or *Hoster*. With $23,000 in liquid assets, a monthly surplus of $34 (monthly gross income $1,673 − $1,638.87 of monthly expenses)[4], an interest income of approximately $1,850.00 yearly from his annuities and a wife who is earning income so that she is not a burden to him, James retains the ability for the time being to pay $275 per month for child and spousal support.

James also points to Dorothy's income and expenses in support of his motion to reduce the spousal and child support payment. Dorothy has a surplus of $170.74 per month ($1,257.80 "net income," − $1,087.06 of monthly expenses). Dorothy has approximately $2,000 in savings. James points out that Dorothy is earning more than he is. While changes in the financial abilities of the parties are a principal concern when considering a motion to modify a divorce judgment, *Bingert v. Bingert*, 247 N.W.2d 464, 467 (N.D.1976), the trier of fact must go beyond the parties' incomes. *Lipp v. Lipp*, 355 N.W.2d 817, 819 (N.D.1984). In the instant suit, the trial court considered Dorothy's income and personal expenses along with the "extraordinary expenses" she incurs from providing support to Laurie Ann. We note that Dor-

othy, at age 63, is nearing the age of retirement when her income will likely be reduced while her living expenses remain constant or may even increase.

Although James' anticipated decline[5] in income may eventually tip the equitable balance in his favor, we cannot now say the denial of his motion to modify the divorce decree was based on clearly erroneous findings. *Cf. Lipp, supra* at 819.

The order denying the motion to reduce Laurie Ann's child support payments and to eliminate Dorothy's spousal support payments is affirmed. Costs on appeal are awarded to Dorothy.

VANDE WALLE, GIERKE, MESCHKE and LEVINE, JJ., concur.

---

4. James' monthly surplus would appear to be higher as 80 percent of his $408 per month physical therapy expense is paid by insurance. The trial court pointed this out after calculating James' monthly income and expenses.

5. James introduced evidence which suggested his monthly income would sharply decline at age 65: "[James] receives $743.00 per month Social Security Disability, $547.74 per month Teacher's Retirement Disability which will be reduced when he reaches age 65, and $382.89 per month long term disability which will stop when he reaches age 65." Such an involuntary reduction in monthly income may substantiate a future claim for reduction of child and spousal support but it does not do so at this time.