Ronald W. WHEELER, Plaintiff and Appellee,

v.

Geraldine S. WHEELER, Defendant and Appellant.

Civ. No. 11354.

Supreme Court of North Dakota.

March 4, 1988.

---

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for plaintiff and appellee; argued by Steven L. Latham, Bismarck.

Kuchera, Stenehjem & Wills, Grand Forks, for defendant and appellant; argued by Wayne K. Stenehjem, Grand Forks.

MESCHKE, Justice.

Gerridee Wheeler appealed from modification of support payments under an agreed divorce decree, arguing the settlement agreement contemplated her employment earnings. We remand for reconsideration.

After 35 years of marriage, R.W. Wheeler and Gerridee Wheeler divorced in 1984. R.W. agreed to pay Gerridee $2,430 per month "for her support and maintenance" until his anticipated retirement in 1994. The agreement also provided:

"If Gerridee Wheeler should obtain employment, she will notify the Plaintiff informing him of the gross earnings derived from said employment. On the first day of the third month following the month in which she accepts employment, the responsibility of R.W. Wheeler for payment of the monthly alimony shall be reduced by an amount equal to one-third of the gross monthly earnings of Gerridee Wheeler by employment, but the maximum reduction for this reason shall not exceed $430.00 per month, during the period of employment."

In directing incorporation of the settlement agreement into the divorce decree, the trial court approved and confirmed it, "subject to continuing jurisdiction of the Court in the matter the [sic] necessary support and maintenance to be provided for the defendant by the plaintiff...."

Shortly after the divorce, Gerridee began working at a monthly salary exceeding $1,290, which automatically reduced her support by the agreed maximum of $430.

In January 1986, R.W. moved to modify the decree to eliminate support payments to Gerridee, arguing that she had "achieved economic rehabilitation and emancipation through employment." At the time, Gerridee earned $2,800 monthly, or $33,600 annually. She had also earned $12,400 more during 1985 as a legislative lobbyist. R.W.'s income continued at $50,000 annually.

The trial court relied upon "specifically retained jurisdiction to modify 'necessary support and maintenance,'" determined that "there has been a substantial change in circumstances that was not contemplated by the parties," and reduced the support payments to $700 monthly "[i]n order to allow the parties ... to maintain a standard of living close to their station in life."

In her appeal from the modification of the decree, Gerridee argued that no substantial change of circumstances occurred, that the settlement agreement contemplated her employment earnings, and that a trial court should not alter an agreement of divorcing parties.

## I. *Power to Modify*

■ This court has observed that "[t]he restrictions upon the ability of the parties to rescind contractual stipulations, ... do not apply to the power of the court to modify a [divorce] decree which may have been based upon a contractual stipulation." *Becker v. Becker,* 262 N.W.2d 478, 481 (N.D.1978). When a decree is based on an agreement, rather than the court's findings, the trial court should be more reluctant to revise it. *Eberhart v. Eberhart,* 301 N.W.2d 137, 143 (N.D.1981). But, clearly, agreed spousal support can be modified upon a showing of material change of circumstances which justifies doing so. *Eberhart v. Eberhart, supra; Cook v. Cook,* 364 N.W.2d 74 (N.D.1985).

In this case, the trial court expressly retained the continuing power to change support and maintenance. When a divorce decree incorporates an agreement of the parties, the other provisions of that decree are equally important. And, NDCC 14–05–24 provides:

> "When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. *The court from time to time may modify its orders in these respects.*" (Emphasis added).

"North Dakota case law holds that an award of spousal support may be modified upon a showing of changed circumstances. [Citations omitted.] Furthermore, in deter-

mining that the district court has continuing jurisdiction in the matter of spousal support, we note that the judgment in the instant case contains an express reservation of jurisdiction over spousal support." *Wikstrom v. Wikstrom,* 359 N.W.2d 821, 825–826 (N.D.1984).

We conclude that the trial court had the power to modify the spousal support provision in this divorce decree.

## II. *Modification*

To modify spousal support, circumstances must have changed materially. *Muehler v. Muehler,* 333 N.W.2d 432 (N.D.1983); *Cook v. Cook, supra.* Slight, or even moderate, changes in the parties' relative incomes are not necessarily material. *Lipp v. Lipp,* 355 N.W.2d 817, 819 (N.D.1984). "Material change" means something which substantially affects the financial abilities or needs of a party. *Muehler v. Muehler, supra.* The reason for changes in income must be examined, *Lipp v. Lipp, supra,* as well as the extent that the changes were contemplated at the time of the agreed decree. *Muehler v. Muehler, supra,* at 434.

Although N.D.R.Civ.P. 52(a) does not apply to decisions on motions generally, this court applies it to a motion to modify a divorce decree. *Becker v. Becker, supra.* A fact-finding process is required to determine that circumstances have changed materially. *Corbin v. Corbin,* 288 N.W.2d 61, 65 (N.D.1980). The standard of our review is whether the trial court's findings were clearly erroneous. N.D.R.Civ.P. 52(a). We set aside findings only when we have a definite and firm conviction that a mistake has been made. *Jondahl v. Jondahl,* 344 N.W.2d 63, 67 (N.D.1984).

■ At the time of the original decree, Gerridee's only income was the $2,430 monthly support she received from R.W. R.W.'s monthly income was $4,170, less the $2,430 paid to Gerridee, or a net of $1,740, and $690 per month less than Gerridee's. After the divorce, Gerridee, who had not had paying employment outside the home

and had not trained for a career, obtained a well-paying job. This altered relative incomes considerably.

Gerridee's monthly earnings at the time of the modification were $2,800, and with $2,000 in support, her monthly income totalled $4,800 (and more, to the extent of her additional lobbying income). R.W.'s monthly net income, after paying $2,000 support to Gerridee, was only $2,170, far less than half of Gerridee's.

R.W. explained that his desire to retain the respect of his children motivated him to agree to a support amount that would enable Gerridee to maintain the standard of living she had acquired during their marriage. The settlement agreement contemplated that Gerridee might "obtain employment," but it did not require her to do so. It automatically reduced support "by an amount equal to one-third of [her] gross monthly earnings...." According to R.W., this reduction relieved him from the amount of the monthly mortgage payment on the house, as property distributed to Gerridee, without anticipating any greater potential of her future earnings. R.W. testified that no discussions of further support reduction took place because: "If I would have, she'd have never gone to work." At the modification hearing, Gerridee did not testify.

We agree with the trial court that "Gerridee must be complimented and admired in using her talents and abilities in obtaining her present position and earnings." But, considering that the expressed purpose of the payment was "for her support and maintenance," we cannot say that the trial court was clearly erroneous in finding that the settlement agreement did not contemplate the full extent of Gerridee's employment earnings. While a trial court should be more reluctant to revise agreed support, it can do so for a reason not fully contemplated by the parties.

R.W. testified that the purpose of the support provision was to permit Gerridee to maintain her standard of living. The trial court reduced Gerridee's support to $700

per month "[i]n order to allow the parties ... to maintain a standard of living close to their station in life." This is one appropriate consideration, since divorcing parties' resources often are " 'not sufficient to maintain each of the parties at the same standard of living after the dissolution of the marriage as each enjoyed during the marriage.' " *Dick v. Dick*, 414 N.W.2d 288 (N.D.1987). As we observed in *Weir v. Weir*, 374 N.W.2d 858, 864 (N.D.1985): "The awarding of spousal support ... is [often] an attempt to provide an equitable sharing of the overall reduction in the parties' separate standards of living, ..."

After the modification, Gerridee's net monthly income from earnings (apart from any lobbying income) and support was $3,500, as was R.W.'s. While, ordinarily, a modification to equalize disparate standards of living is not clearly erroneous, we are not convinced that the trial court fairly balanced the scales or considered all the factors in resetting the support amount.

■ The trial court did not make any specific findings about Gerridee's need for retirement savings, although that subject was called to its attention. Gerridee's financial statement showed that at the time of the hearing, she was contributing, monthly, $166 to an IRA account, $900 to a tax saving annuity, and $200 to savings, for a monthly total of $1,266. Thus, the $1,300 monthly reduction in her support effectively eliminated her retirement savings.

The trial court determined that R.W. "had no pension, retirement plan, savings or other income-producing property," and that "[h]e left the marriage only with his ability to earn a living," while Gerridee "received most of the assets of the marriage." But, while focusing on Gerridee's increased standard of living, the trial court did not consider whether R.W. had a reduced standard of living which should be shared by Gerridee. There was no evidence before the trial court on R.W.'s standard of living because he did not argue that his standard of living had suffered or

that he had financial difficulty in paying the agreed support. R.W.'s only argument for modification of support was that Gerridee had achieved economic rehabilitation through her employment.

If standards of living are equalized by adjusting support, Gerridee's standard of living and financial needs, such as for retirement funding, must be comparably weighed with R.W.'s standard of living and needs. Without evidence about those factors for R.W., the trial court could not adequately do so. While the trial court attempted to account for their relative financial abilities in modifying the amount of "support and maintenance" for Gerridee, we are not satisfied that it fairly considered their needs.

If a supported spouse is not to be penalized "for her initiative and ... incentive for self betterment," *Lipp v. Lipp*, 355 N.W.2d at 819, her agreed support should not be reduced simply because she has improved her financial ability. Her standard of living and needs, as well as those of the paying spouse, must be weighed along with their relative financial abilities.

Accordingly, we remand for reconsideration of the amount of support in the light of this opinion.

LEVINE, Acting C.J., VANDE WALLE, J., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of ERICKSTAD, C.J., disqualified.

GIERKE, Justice, specially concurring.

I reluctantly concur with the majority's decision to remand this case for reconsideration of the amount of support payable by R.W. to Gerridee. My inclination was to reverse the trial court, thus denying the modification sought by R.W.

While I agree that despite the parties' agreement, a court may modify a judgment based on a material change of circumstances, this Court has said that when a decree is based on an agreement, rather than the court's findings, the trial court should be more reluctant to revise it. *Eberhart v. Eberhart*, 301 N.W.2d 137, 143 (N.D.1981). I am also of the view that the material change of circumstances should be something that was not contemplated by the parties. As is stated in the majority opinion, it was definitely contemplated by the parties that Gerridee would seek employment. It is also obvious that it was contemplated that her employment might yield her more than $1,290.00 per month. Otherwise, there would have been no purpose for the provision that R.W.'s payments would be reduced by one-third of Gerridee's gross earnings but said reduction would in no event exceed $430.00 per month. As is pointed out in the majority opinion, Gerridee's income became a great deal more than that. Obviously, at some point the amount of income could rise to a level above that which was contemplated by the parties at the time of the divorce settlement. While I am not sure that I would have so found, had I been the trier of fact in this case, I agree with the majority opinion that the trial court's finding in this respect is not clearly erroneous.

The next consideration is the modification which was ordered by the trial court in this case. As is stated by Justice Meschke in the majority opinion, quoting from *Lipp v. Lipp*, 355 N.W.2d at 819: "If a supported spouse is not to be penalized 'for her initiative and ... incentive for self betterment,' her agreed support should not be reduced simply because she has improved her financial ability." This is a matter of concern in this case in that it appears that the trial court overlooked an important provision of the settlement agreement in making its modification. The settlement agreement not only limited the reduction to $430.00 per month—it also contained the limitation that no more than one-third of Gerridee's salary would serve to reduce R.W.'s support obligation. This provision was obviously placed in the agreement to provide incentive for Gerridee to improve her financial ability. Accordingly, it seems

to me that the trial court's modification of support in this case should have limited the reduction of support to one-third of Gerridee's earnings which would have resulted in a maximum reduction of $933.00 (one-third of the $2,800.00 salary) rather than a total reduction of $1,730.00 which was ordered. It appears to me that the order of the trial court would certainly tend to destroy any incentive for Gerridee to strive to better herself financially. Had she sought employment that would have brought her up to the level of only $1,290.00 per month, she would have been receiving almost the same amount of money as she would under the trial court's order even though she is making $2,800.00 per month. She would be receiving $1,290.00 per month plus $2,000.00 ($2,430.00 minus the $430.00) for a total of $3,290.00. After the trial court's order, she receives the $2,800.00 salary plus $700.00 per month from R.W. for a total of $3,500.00. Therefore, as a result of her earning an additional $1,510.00 per month, she actually realizes only an additional $210.00 per month. This result certainly conflicts with the obvious purpose of the one-third limitation, that being to provide some incentive for Gerridee to better herself. Accordingly, it is my view that upon remand the trial court should not only consider the retirement needs of Gerridee but also the limitation contained in the divorce agreement which provided that any reduction of R.W.'s support obligation would be limited to one-third of Gerridee's earnings, therefore leaving her with at least two-thirds of what she earns and, along with that, the incentive to continue to improve herself financially.

LEVINE, Acting C.J., concurs.